## 19783.  SHAW *et al. v.* MILLER.

HAWKINS, Justice.   This is the second appearance of this case in this court.   When here before, in *Miller v. Shaw,* 212 *Ga.* 302, 309 (92 S. E. 2d 98), it was held that "it was error to sustain the demurrers to count 2 of the petition, in so far as it sought reformation of the deed.   As against general demurrer, the petition was sufficient to allege a cause of action on account of a mutual mistake of law. . . It is distinctly alleged in the petition that, instead of reciting $1 as the true consideration for the deed, it was intended that the consideration actually agreed on between the parties was the promise of the intestate to devise the property to the plaintiff in her will. As against the general and special demurrers interposed, the petition sufficiently alleged a cause of action for reformation." The case went to trial before a jury on count 2, in which it is alleged that both the grantor and the grantee believed, intended, and agreed that the true consideration for the deed in question was the promise of the grantee to will and devise said property to the grantor, and neither the grantor nor the grantee believed that it was necessary to recite as consideration for the said deed the promise of the grantee to the grantor in order to render the promise of the grantee a legal and binding obligation upon her; but, instead, each of them mistakenly believed that, in order to effectuate and carry out the intention of the parties, a nominal monetary consideration of one dollar should be incorporated in said deed by way of recital.

Counsel for the plaintiffs in error, who were defendants in the trial court, contend that there was absolutely no evidence introduced by the plaintiff in the trial court to sustain any alleged mutual mistake of law between the grantor and the grantee.   Counsel for the defendant in error, who was plaintiff in the trial court, contend that the evidence clearly and unequivocally shows that the actual, real, and true consideration for the warranty deed from the grantor to the grantee was the grantee's agreement to devise to the grantor the property conveyed, and each of them was laboring under the mistaken belief that, to make the agreement legally binding, a consideration of one dollar should be recited in the deed.

On the trial the wife of the grantor testified: "Aunt Lil [the grantee, who is now deceased] asked my husband how about selling her a lot, that she wanted to build a home there, to be

close to some of us, to take care of her, and he told Aunt Lil that he wouldn't sell her a lot, that he didn't want to get rid of any of his property, for sentimental reasons he wanted to keep it, and she says, 'Well, Burt, I wanted to be close to some of you all where you could take care of me,' and then he said, 'Well, Aunt Lil, I'll do this: I will deed you a lot provided that you will make a will and will the house and lot to me at your death,' and she agreed to do it." She further testified: "He [the grantor] told her that he would prepare a deed and deed her the lot if she would in turn make a will and will it to him at her death, and she agreed to it, and he said, 'In order to make the deed legal I believe we have to put the sum of a dollar in there,' and Aunt Lil said, 'Burt, I think you are right, I believe we do to make it legal.' So he had the deed prepared and drawn up according to that." She also testified that her husband, the grantor, "took care of everything out there. He saw to the house when it was being built and all, and then after it was completed he cleared the yards and cleaned them and hauled dirt and filled them in and all. He took care of the place just like it belonged to him because she had promised him that at her death it would come back to him, and he never did give up possession of it. She occupied the house, but he treated it as his own because it was his property."

The mother of the grantor testified: That she was the sister of the deceased grantee, who, in March or April of 1953, told her "that my son, J. B. Miller, had deeded her a lot and she was going to build a house on it, deeded her a lot free from his property, and she was going to build a house on it and she was going to make a will and will it to him at her death"; and that the lot in question was almost in her son's front yard.

Miss Erma Shaw, a sister of the deceased grantee and also of the mother of the grantor, testified that the deceased grantee told her in 1953 that "Burt was giving her a lot for which she was going to build a house and she was going to . . . will it to him at her death; she was going to will the house and the lot to him."

James B. Miller, the grantor, testified that his Aunt Lil, his mother's sister, "wanted to buy a lot to build her a house, and I told her, 'Aunt Lil, I wouldn't sell a lot for any price,' not the one she wanted for any price, and she says, 'Well, I want to build me a little house.' I said, 'Well, I'll tell you what

I'll do, I'll deed you a lot, but I wouldn't sell it to you.' Because it was in, like I said, my front yard, was the one she wanted. And then she said, 'I will leave it to you at my death, I will make a will and leave it to you at my death.' Well, then it didn't matter too much about it being, you know, too close to the house." He further testified that both he and the grantee thought there would have to be a recitation of a dollar in the deed to make it legal, "that I couldn't just give her a lot," and that she stated it was her understanding that the dollar had to be in there to make the arrangement binding, that is, her agreement to will the property to him. He also testified: "I never have given up possession of that property. . . I kept the grass cut before and after her death. I even cleaned out a septic tank, did all the work there. I never turned possession of the house over to anybody."

The jury returned a verdict in favor of the plaintiff, to which the defendants filed a motion for new trial on the general grounds only, which motion was denied by the trial judge, and the exception here is to that judgment. *Held:*

As was said in *First Joint Stock Land Bank of Montgomery* v. *Sasser*, 185 *Ga.* 417, 418 (195 S. E. 143), "The motion for new trial contains only the grounds that the verdict is contrary to the evidence, and without evidence to support it; that it is decidedly and strongly against the weight of the evidence; and that it is contrary to law and the principles of justice and equity. Under this situation, the verdict having received the approval of the trial judge, there is, under repeated rulings, but one thing that this court can consider: Are the material issues supported by any evidence?" An examination of the brief of evidence, some of which has been quoted in the statement of facts, shows that the verdict is supported by some evidence, and, accordingly, this court cannot hold that the trial judge erred in denying the motion for new trial. *Associated Mutuals* v. *Pope Lumber Co.*, 200 *Ga.* 487, 496 (37 S. E. 2d 393).

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 9, 1957—DECIDED SEPTEMBER 6, 1957—
REHEARING DENIED OCTOBER 11, 1957.

*Harold Sheats, Guy Parker,* for plaintiffs in error.
*Calhoun & Calhoun,* contra.